UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No. 09-150 (RBW) |
| v. : | |
| : | |
| WALTER KENDALL MYERS : | |
| a/k/a/ Agent 202 : | |
| : | |
| and : | |
| : | |
| GWENDOLYN STEINGRABER MYERS, : | |
| a/k/a Agent 123 and Agent E-634 : | |
| : | |
| Defendants : | |
| : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

For nearly 30 years, Kendall and Gwendolyn Myers committed one of the worst crimes a citizen can perpetrate against his or her own country – espionage on behalf of a long-standing foreign adversary. They spied on behalf of the Republic of Cuba, an authoritarian Communist regime that undoubtedly used the secrets they provided, and the power those secrets conveyed, to prop itself up and act against the interests of the United States.

And the defendants are actually proud of that legacy. They feel no remorse for what they did, nor for the harm that their espionage caused the United States. They betrayed the United States by choice. They became spies not because they were pressured by blackmail or the need for money, but allegedly because of a shared Communist ideology and an adoration of the Cuban revolution. Even if true, that assertion provided no justification when they were spies and should provide no mitigation now when it is time to sentence them for their perfidy. Simply put, it is a

fallacy to suggest that there are better reasons than others to be a traitor. Whatever their rose-colored picture of the Republic of Cuba may be, and whatever justification they may give for their conduct, it is of no importance, because a just and fair nation rightfully "detests a traitor, no matter how he sugarcoats his treason or justifies his betrayal."[1] In this case, no excuse should excuse.

Any attempt now by them to assert that they acted out of conscience and ideology when they betrayed the United States of America should be rejected by this Court as self-serving and woefully insufficient to mitigate their espionage. Make no mistake, the defendants intended to and did harm the United States. Consistent with their plea agreements, Kendall Myers should be sentenced to life in prison without the possibility of parole and Gwendolyn Myers to the very top end of her plea agreement's sentencing range, i.e., 90 months.

## The Defendants' Plea Agreements

On November 20, 2009, pursuant to a written plea agreement, Kendall Myers entered a plea of guilty to an Information charging him with one count of Conspiracy to Commit Espionage, in violation of 18 U.S.C. § 794(a) and (c), and two counts of Wire Fraud in violation of 18 U.S.C. § 1343. On that same date, Gwendolyn Myers entered a plea of guilty to an Information charging one count of Conspiracy to Gather and Transmit National Defense Information in violation of 18 U.S.C. § 793(g). This Court accepted both pleas and entered them on the record.

As part of those pleas, the defendants agreed to the forfeiture of $1,735,054 through the

---

[1] Pete Early, *Confessions of a Spy: The Real Story of Aldrich Ames* (1998).

entry at sentencing of a money judgment in favor of the United States, such amount representing the sum of money Kendall Myers defrauded the U.S. government by receiving a federal salary when he was actually spying for the Cuban government. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties also agreed that Kendall Myers would serve a term of life imprisonment without the possibility of parole and Gwendolyn Myers would serve a term of anywhere from 6 to 7 1/2 years (i.e., 72 to 90 months) to be determined by this Court at sentencing.

The sentencing concession to Gwendolyn Myers – who would otherwise face 120 months under the Federal Sentencing Guidelines – reflects first and foremost the Government's judgment that pursuing the same espionage charges through a contested trial risked further significant harm to the national security. Second, the plea agreements also reflect the relative culpability of the defendants. It was Kendall Myers who was initially contacted by the Cuban intelligence service to be a covert agent, and it was Kendall Myers who, in turn, recruited Gwendolyn. It was also Kendall Myers alone who, in violation of his oath and non-disclosure agreements as a federal employee with a security clearance and fully appreciating the harm that his actions would cause, actively sought access to the United States' most sensitive classified information, selected what secrets would be of greatest benefit to the Cuban government, and stole them from the Department of State. He was the prime mover and driving force behind their espionage and, without him, it would not have occurred.[2] For this, Kendall Myers should spend the remainder of

---

[2] Although less certain, the converse is probably also true. Without Gwendolyn Myers' deference to, if not active support and encouragement of, seemingly everything her husband did, Kendall Myers' desire to become a Cuban spy 30 years ago may well have been short-lived.

his life in prison.  Gwendolyn Myers, on the other hand, while she was fully supportive of, and engaged in, their espionage, never had access to classified information.  Her role was primarily related to communicating with their Cuban handlers and assisting in the transmission of the information Kendall Myers had gathered.

Finally, permitting the defendants to enter negotiated pleas of guilty that allowed a reduced sentence for Gwendolyn Myers, also had the benefit of permitting their comprehensive debriefing by the intelligence community concerning their espionage activities.  Without entering the plea agreements, those important debriefings would not have gone forward.

### The Defendants' Cooperation

The defendants' plea agreements require that the Government inform the Court at sentencing of the defendants' "cooperation, or lack thereof," for its consideration in sentencing Gwendolyn Myers within the agreed Rule 11(c)(1)(C) sentencing range.   In order to create an incentive for Kendall Myers to cooperate with the Government during the debriefings, the plea agreements indicated that his cooperation, or lack thereof, would inure to Gwendolyn Myers' benefit (or detriment) at sentencing.  See paragraph 6 of the Plea Agreements.  To assist the Court, the Government has submitted a classified, in camera filing containing the Federal Bureau of Investigation's (FBI) assessment of the scope and value of the defendants' cooperation.  The Court is referred to that document for a full explanation of their cooperation during the debriefings.  The Government would only add that within days of their arrest, the defendants offered to cooperate with the Government and work towards a possible guilty plea.  For that reason, the case never entered a trial posture, and no time or effort was wasted on contested

discovery litigation or preparation for trial.  Further, the defendants should be credited for agreeing to the Government's request of early debriefings by the FBI prior to any substantive plea negotiations, a position that knowingly placed them at some risk had the Government later refused to make a plea offer or had any plea offer not led to an agreement.  Finally, pursuant to their agreement to cooperate, the Government believes it has received a full accounting of the defendants' assets and believes they have taken active efforts while this case was pending to preserve their assets for forfeiture to the Government at sentencing.

      That said, the FBI's classified memorandum concerning the substance of the defendants' debriefings reflects, at best, a mixed assessment of their success and value to the Government.  On the positive side, Kendall and Gwendolyn Myers were generally outwardly cooperative during numerous debriefing sessions by the FBI and other members of the intelligence community.  At no time did they ever refuse to attend those sessions.  As for the substance of the debriefings, in certain areas the defendants provided information of significant value to the Government.  In others, they did not.  Further, the FBI memorandum identifies material areas in which the debriefings were marred by both of the defendants' lack of recollection or inconsistencies and contradictions.  There were times when the FBI assessed that Kendall Myers, in particular, gave inconsistent or uncooperative responses or was intentionally withholding information.

      While the Government is certainly troubled by that assessment, it is ready to go forward with sentencing in this case.  It has received all of the value that it believes it is going to derive from the debriefing process, and will not seek to hold the Myers in breach of their plea

agreements for non-cooperation. The Government notes that the process of proving a breach of the defendants' plea agreements at a contested hearing, and, if successful, litigating this case through trial, could well cause significant additional harm to the national security interest of the United States. Given Kendall Myers' life sentence under his plea agreement, the Government believes that risking such harm to gain a chance at additional punishment for Gwendolyn Myers is plainly not in the national interest. Stated another way, seeking to prove a breach of the defendants' plea agreements to gain a chance to incarcerate Gwendolyn Myers (who is 72 years-old) to more than 90 months in prison would not be worth the risk to national security that a contested breach proceeding and trial in this case may well cause. The Government has consulted with the FBI and the members of the intelligence community affected by the defendants' espionage and they have concurred in this judgment.

### Gwendolyn Myers Should Be Sentenced to 90 Months Incarceration

The limited value of the defendants' briefing sessions should, however, be considered by this Court in determining the sentence for Gwendolyn Myers within the parties' agreed sentencing range, i.e., between 72 and 90 months. Indeed, the defendants' plea agreements explicitly contemplate that the defendants' cooperation, or lack thereof, may be considered by the Court in determining her sentence. See paragraph 6 of the Defendants' Plea Agreements. The parties' negotiated plea allows Gwendolyn Myers a sentence of at least 30 months less than she would have otherwise faced if she had been offered a sentencing guidelines plea of 120 months. The limited value of the defendants' cooperation – even without consideration of the FBI's assessment that Kendall Myers intentionally withheld material information during the debriefings

– does not warrant any further reduction in Gwendolyn Myers sentence below 90 months.

Nor does an assessment of her criminal conduct.  Gwendolyn Myers was far more than just a knowing "wife of a spy."   They were both recruited by CuIS to serve as "paired" covert agents.  Id. at p. 4.  Like her husband, she was given a code name by the CuIS.  He was Agent 202.  She was Agent 123.  See Factual Proffer in Support of Guilty Plea for Gwendolyn Myers at pp. 8, 9-10.  She not only supported and encouraged her husband's theft of U.S. secrets from the Department of State but *she also actively engaged in their espionage*.  She was the computer/technical agent and both she and Kendall Myers accepted training from the FBI's source during the undercover operation concerning encryption methods and covert communications.  Id. at 7.  She used a parole, or pass phrase, with the FBI's source that she acknowledged they had used in the past in their meetings with their CuIS handlers.  Id. at 7.  Like Kendall Myers, she received coded shortwave messages, and clandestine e-mails, from CuIS.  Id. at p. 5, 8.  She also processed for delivery to their CuIS handlers the classified information Kendall Myers stole from the Department of State.  Id. at 8.  She traveled with him to meet with their handlers overseas.  Id. at p. 8.  In the United States, she had operational meets with their Cuban handlers both with Kendall Myers and, the Government's evidence would have shown, without him.  Id. at p. 8.  Finally, she made clear during their meetings with the FBI's undercover source that she understood the sensitivity of the classified information which they had previously passed to the CuIS.  Id. at p. 9. All of this occurred for nearly 30 years.

Gwendolyn Myers' criminal culpability is thus significantly greater than other past spouses of spies, namely Rosario Ames, the wife of Russian spy Aldrich Ames, and Anne

Pollard, the wife of Israeli spy Jonathan Pollard.  Unlike Gwendolyn Myers, neither Rosario Ames nor Anne Pollard decrypted coded messages from, assisted in the transmission of classified information to, nor had repeated, substantive operational meets with, the foreign intelligence service at issue.   The length of the espionage conspiracies in both of those cases was also significantly shorter in time than what is at issue here, i.e., approximately 18 months in the Pollard case and approximately 9 years in the Ames case.   Nevertheless, Anne Pollard received a sentence of 60 months, and Rosario Ames received a sentence of 63 months.  Given Gwendolyn Myers' significantly greater criminal culpability and the three-decade length of her and her husband's espionage conspiracy, a sentence at the very top end of the agreed sentencing range is plainly justified.

### Kendall Myers Should Be Sentenced to Life without Parole

Unlike many defendants who appear for sentencing before this Court, Kendall Myers was born into this world with every conceivable advantage.  The great-grandson of Alexander Graham Bell and grandson of Gilbert Grosvenor, his was a life of wealth and privilege.  He attended the finest schools, including a private boarding secondary school in Pennsylvania and Brown University for college.  He also earned a Ph.D from Johns Hopkins University.   Kendall Myers could have been anything he wanted to be.   He chose to be a Cuban spy.

He chose to use his substantial intellect and education to prey on the most sensitive secrets of the United States. He took a federal oath of office "to support and defend the Constitution of the United States against all enemies foreign and domestic" that he never had any intention of honoring.   He then sought and obtained jobs within the Department of State solely

because they would give him the widest possible access to classified information that he could steal for CuIS. He also developed friendships with other unwitting intelligence analysts just so he could exploit them for the benefit of Fidel Castro. For Kendall Myers, his work colleagues were all just targets of opportunity for CuIS.

In the last 8 years of his career Kendall Myers finally achieved his career goal as a spy: he became a senior intelligence analyst for Department of State's Bureau of Intelligence and Research which provided him with daily access to TOP SECRET/SCI information, including signals intelligence, human intelligence and analytic products. It was this TOP SECRET/SCI information that he would sneak home, and, with Gwendolyn Myers' help, process for delivery to CuIS.[3] In the final indignity to our nation, Kendall Myers made the American taxpayer pay for it all. His paycheck came from the United States. CuIS paid him nothing.

Kendall Myers' guidelines sentencing is life without the possibility of parole. That is what he agreed his sentence should be under the parties' negotiated plea agreement, and that is unquestionably what he deserves.

## Conclusion

The United States respectfully requests that, consistent with the parties' Rule 11(c)(1)(C) plea, the Court sentence Kendall Myers to life in prison without the possibility of parole and

---

[3] The Government submits separately under seal a Classified Addendum detailing the TOP SECRET/SCI information that the Government could have proven at trial that was passed or gathered for the benefit of CuIS during the conspiracy. As this Court is aware, at the time of the conspiracy, "TOP SECRET" information was defined by Executive Order 12958, as amended by Executive Order 13292, and their predecessor orders, Executive Orders 12356 and 12065, as information, the unauthorized disclosure of which could reasonably result in "exceptionally grave" damage to the national security.

Gwendolyn Myers to 71/2 years (90 months) imprisonment.  Further, it respectfully requests that the Court impose as part of Kendall Myers' sentence consistent with the previously entered consent order for forfeiture, a money judgment in the amount of $1,735,054.

                Respectfully submitted,

                RONALD C. MACHEN JR.
                United States Attorney

                      /s/
                G. Michael Harvey
                Assistant United States Attorney
                D.C. Bar #447465
                National Security Section
                United States Attorney's Office
                555 Fourth Street, N.W., 11th Floor
                Washington, D.C.  20530
                (202) 305-4155
                Michael.Harvey2@usdoj.gov

                      /s/
                Clifford I. Rones
                Senior Trial Attorney
                Md. Bar No. 8506010284
                Counterespionage Section
                United States Department of Justice
                1400 New York Ave., NW, 9th Floor
                Washington, DC 20530
                (202) 514-1124
                Clifford.Rones@usdoj.gov